# GARFIELD *v.* UNITED STATES EX REL. GADDIS.

CONSTITUTIONAL LAW; DUE PROCESS OF LAW; ATTORNEYS, DISBARMENT
OF; MANDAMUS.

Where, in a disbarment proceeding against an attorney in which he was
charged with having bought for an inadequate price a bounty-
land warrant from his client for whom he had procured its issue,
the Commissioner of Pensions, without notice to the attorney, took
the deposition of the client and his son to prove the correspondence
which had taken place between them and the attorney, and which
was undisputed, and the Commissioner, in recommending the dis-
barment of the attorney, and the Secretary of the Interior, in dis-
barring him, considered such depositions; but it appeared that the
attorney was furnished with copies of them and did not object to
their consideration, and, in his defense and his argument in support
of it, commented upon them,—it was *held* that the taking and con-
sideration of the depositions did not amount to a denial of due
process of law, and justify the granting of the writ of mandamus to
compel the Secretary to vacate his order of disbarment.

Nos. 1933, 1937, and 1948.  Submitted October 13, 1908.  Decided Novem-
ber 6, 1908.

HEARING on an appeal by the respondent, the Secretary of the
Interior, from an order of the Supreme Court of the District
of Columbia sustaining a demurrer to the answer to a petition
for the writ of mandamus, and directing the issuance of the
writ to compel the respondent to vacate an order disbarring the
petitioner from practice before the Department of the Interior;
and also on motions by the appellee to dismiss the appeal and
to dismiss certain special appeals taken by the respondent.

*Motions denied and order reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from an order directing a writ of man-
damus to issue to James R. Garfield, Secretary of the Interior,
commanding him to vacate an order made May 1, 1908, disbar-
ring Edgar T. Gaddis, and to restore him to practice before the
department and its bureaus and offices.

The petition on which this order was made alleged the ad-
mission of relator to practice before the department, the presen-
tation of charges against him, his answer thereto, and the pro-
ceedings therein, and charged that he was found guilty of a
different offense from that charged, and was denied due process
of law in the matter of taking testimony and hearing.

It appears from exhibits attached to the petition, and from
the answer of the respondent, that, on April 13, 1907, the Com-
missioner of Pensions, after an investigation of the practices
of attorneys before his bureau, served upon relator a charge in
writing to the effect that he had been guilty of improper, unpro-
fessional, and illegal conduct in connection with the bounty-land
warrant of one Andrews.   The specific charges were, in sub-
stance: That relator, as attorney for Andrews, filed the claim
on June 24, 1904.   That the warrant was allowed September
16, 1904, and delivered to relator October 18, 1904.   That, af-
ter the receipt of the warrant, relator wrote to Andrews, who
was a blind man living in Lowell, Massachusetts, that, if he did
not wish to locate the land, he would try to get someone to take
it off his hands.   That Andrews replied to the effect that, being
blind, he could not locate the warrant and would sell the same.
That thereupon relator wrote to Andrews offering to buy the
warrant for $160, and sending him a blank assignment for ex-
ecution.   That this was executed and returned with request to
deduct the fee of $25 and remit balance.   That, on February
25, 1905, relator delivered the warrant and the assignment, in
which no name of assignee had been entered, to Thomas R. Har-
ney, receiving $500 therefor.   Thirty days were given to answer
the charge.

Relator made reply thereto April 18, 1907, denying that he

had been guilty of unprofessional or illegal conduct in the matter. He averred that he notified Andrews of the allowance of the claim, and asked for his fee of $25. That Andrews wrote expressing his disappointment, as he supposed he would receive money instead of land. That he wrote to Andrews, in reply, the following letter on September 28, 1904:

Mr. John Andrews,
                91 Concord Street, Lowell, Mass.
Dear Sir:—

It is proper to explain, in response to your letter, that a land warrant is simply a right on the part of the beneficiary, or his assigns to search out a tract of unoccupied government land not already pre-empted by settlers, and, by virtue of the land warrant, acquire fee-simple title thereto.

The expense of locating to the ordinary citizen with no facility for doing so would ordinarily make it unprofitable to undertake such a task, not to speak of reducing of land to cultivation. The government does not pay money in lieu of bounty land as you appear to have erroneously supposed, so that if you reduced to cash your warrant must be sold.

The first step, however, is to have the warrant actually issued ("delivered" is the term which should have been used), and that you can have done by signing your name to the inclosed request. Two persons must attest your signature. (If convenient you might also acknowledge the signing before a notary public.) He could simply certify over his seal and signature, "Personally appeared John Andrews and acknowledged the signing of the foregoing instrument."

(Signed)                    Respectfully,
                                        Edgar T. Gaddis.

That, over a week having elapsed without hearing from Andrews, and being anxious about his fee, relator wrote saying that, if it would be any accommodation to him, he would purchase the warrant for $160. By way of defense, in this connection, he stated that his experience with warrants was limited

to this one case; that he was ignorant of the market value of warrants and how and where to dispose of them; that, calling at the General Land Office, he learned that the government appraisement was $1.25 per acre, and he thought he would assume the risk of offering $1 per acre. He next answered to the effect that he had received a letter from Andrews accepting the offer of $160 and inclosing the formally executed order to the Pension Office to deliver the warrant to relator. This was presented and the warrant received. Then followed other correspondence relating to the execution of the assignment and transmission and receipt of the $160 less the $25 fee retained. His defense then is stated that his service as attorney ceased with the allowance of the warrant, and that he had the same right as any other person to purchase the same from his former client. That he had faithfully discharged his professional duties; that the transaction was a bona fide purchase and sale, and not by way of procuring additional compensation for his services. He also stated that, about four months later, he sold the warrant to Harney, but did not say what he had received therefor. In a later statement submitted, he stated the purchase price paid by Harney at $528. The Commissioner of Pensions took the statements of Andrews and his son, who had conducted the correspondence, and remitted the same with his report recommending disbarment, to the Secretary.

This evidence was taken without notice to relator, but copies of the same were given to him by the Commissioner. While the report was pending before the Secretary, the relator, about July 18, 1907, filed with the Secretary a copy of the entire proceeding, including the statement of testimony aforesaid. In his statement submitted to the Secretary this testimony is copied and commented on.

The answer of the Secretary to the petition is lengthy, and denies specifically the charge that relator was not given a full and fair hearing. We extract therefrom the following as bearing particularly upon the questions to be determined:

"Respondent admits the averment of the said paragraph to

the effect that the relator had been shown and permitted to make copies of the papers in these proceedings, including the depositions of John Andrews and his son, George F. Andrews, the reports of special examiners Smith and Freeman, and even the report of the Chief of the Miscellaneous Division of the Department of the Interior and of all the other papers of any kind whatsoever in the case. After considering the record thus made, the Commissioner of Pensions, in the exercise of his discretionary duty under the act of July 4, 1884, and the rules and regulations prescribed by the Secretary of the Interior, did, on the 17th day of June, 1907, recommend to the Secretary of the Interior that the relator be disbarred from practice before the department. The relator conceded the jurisdiction of the Secretary in the premises, and appeared before him, presenting in his own behalf his printed brief and also the affidavit of Addie W. Gaddis relative to the relator's alleged lack of knowledge as to the value of the said bounty-land warrants at the time when he persuaded his client, John Andrews, to assign to him, the relator, for an inadequate consideration, the said land warrant which he had procured for said Andrews as attorney, and thereafter sold the said land warrant with a profit to himself of $340. The said relator admitted the act charged in the citation, but denied that the act constituted an offense; the said relator did not dispute the depositions taken by the said special examiner, but referred to the same and quoted from the same in his argument before the Secretary of the Interior. The plea of the relator in his hearing was that he did not know the value of the land warrant and therefore did not mislead his client intentionally, and that the case was an isolated one, the only one he ever had, and that severe punishment should not be visited upon him on these accounts. The relator specifically admitted the commission of the act charged in the citation, but contended at the hearing that the said act did not make out an offense because he, the relator, did not have knowledge of the value of the said land warrant, and, in all events, that, the case being the solitary one in his career of sixteen years' practice, he should be dealt with leni-

ently by the Secretary. The sole question, therefore, before the Secretary, was as to the character and circumstances of the act agreed to have been done, as to the legal import of the said act, and as to whether it constituted an offense under the law. Full argument was made by relator and full hearing was given to relator, and the proceedings continued from the 15th day of June, 1907, when the Commissioner of Pensions recommended the disbarment, to the 1st day of May, 1908, when the Secretary of the Interior decided the matter and ordered the disbarment.

"After a full consideration of the case as presented by the Commissioner of Pensions, wherein he referred to the Andrews depositions, of the recommendation by said Commissioner of Pensions, of the response of the relator to the citation, of the evidence offered by the relator in his defense, of the admissions made by relator as to the committing of the acts themselves set out in the citation, and of the arguments presented in his behalf, the said Secretary of the Interior, in the proper exercise of the duty imposed upon him by the act of July 4, 1884, on the 1st day of May, 1908, issued an order disbarring the relator from practice before the Department of the Interior and its bureaus on the ground that, after careful consideration of the said recommendation of the Commissioner of Pensions, the testimony in the case, and the arguments in the relator's behalf, he, the said Secretary of the Interior, was convinced that the relator entered into a contract with one John Andrews for the purchasing of a military bounty-land warrant clearly incompatible with the said relator's duties as the attorney of the said Andrews, and with the laws, rules, and regulations under which the said relator was recognized and permitted to represent claimants before said department and its bureaus, and so decided, and thereupon issued the order of disbarment aforesaid.

"Respondent denies every averment in the petition that relator was not granted a full, fair, and legal hearing on the charge in the citation. He denies that relator was not allowed to offer any evidence that he saw fit; he denies that there wa

any *ex parte* hearing; he denies that the relator was denied the right of argument, and denies that he was not offered the opportunity to be heard, and denies absolutely that the relator was not shown every statement, deposition, report, or other paper in the proceedings, and given the right to answer the same in any way he saw fit in the long protracted period above set forth."

"The respondent admits the averment in the seventh paragraph that the only military bounty-land warrant known to have been issued in a claim in which the relator was the attorney was the warrant of the said John Andrews, and that the relator filed fee contracts in such case under the provisions of the act of July 4, 1884, and, for that reason, was entitled to a fee of $25 upon the allowance of said claim. The respondent admits that the said John Andrews desired to sell the warrant which was so issued to him, but, before said warrant had been surrendered to the said John Andrews, the relator, while the attorney of the said John Andrews, led his said client to believe that the warrant was worth the sum of one hundred and sixty dollars ($160), when in fact said warrant was worth not less than five hundred and twenty-six dollars ($526). The relator, on the 18th day of October, 1904, received the said warrant of the said John Andrews, as the attorney of said John Andrews, from the Commissioner of Pensions. The relator thereupon caused to be indorsed upon said warrant a form for its assignment in blank, and forwarded the said warrant to his said client with instructions as to how the said assignment should be executed, and the said assignment was executed in conformity with the relator's instructions, on the 21st day of October, 1904, and thereafter the relator paid to his said client, John Andrews, the sum of one hundred and thirty-five dollars ($135) in consideration of having executed and delivered said assignment, deducting from the one hundred and sixty dollars ($160) which the said relator offered in consideration of the assignment of said warrant the sum of twenty-five dollars ($25), the attorney's fee which the relator was entitled under the provisions of the act of July 4, 1884.

On the 5th day of February, 1906, the relator sold said warrant to Thomas R. Harney, a member of the firm of Milo B. Stevens & Company, of Washington, District of Columbia, for the sum of five hundred and twenty-six dollars ($526). At the time that the said warrant was so procured by the relator to be assigned in his behalf for the sum of one hundred and sixty dollars ($160), and was so sold by the relator for the sum of five hundred and sixty dollars ($560), there were various persons and firms in the city of Washington, District of Columbia, where the relator resides, who were dealers in such warrants, and the actual value of such warrants could have been readily ascertained from said dealers. It was the duty of the relator to have ascertained the actual value of such warrants before attempting to advise his said client, John Andrews, in the premises, and to have exercised at least the same degree of diligence in behalf of his said client as the relator did in his own behalf when he sold the said warrant to Thomas R. Harney at the rate of three dollars and twenty-five cents ($3.25) for each acre represented thereby.

"The respondent denies the averment in said paragraph that the relation of attorney and client had ceased to exist between the relator and his said client, John Andrews, at the time that the contract for sale of said warrant was entered into.

"Respondent denies the averment in the said seventh paragraph of the petition whereby it is sought to be inferred that the reason for the difference in the price at which relator procured the warrant to be assigned to him and the price at which he thereafter sold the said warrant to Thomas R. Harney was due to a recent decision of the Land Department, which caused the said warrants to rise in value, and which said decision was afterwards reversed, thereby causing the warrants to recede to their former position in price. The fact is that the decision referred to is what is known as the *Maginnis Case,* and was made on February 5, 1902 (31 Land Dec. 222), two years before the time that relator procured the assignment of the warrant to himself.

"Respondent specifically denies any allegation contained in

this paragraph, or in any other part of the petition, that no improper representations were made by the relator to his client, and that a fair and adequate price was paid by the relator to his said client in consideration of the assignment of his said client, which the said relator had procured for him, to the relator."

Demurrer to this answer was sustained, and the final order, entered thereon, July 6, 1908, directed the mandamus to issue as prayed. An appeal was taken from that order, by direction of the Departments of the Interior and of Justice, and has been prosecuted without bond. Special appeals were also taken from later orders directing the issue of the writ unless appellant shall file a supersedeas bond in the sum of $7,000.

*Mr. Daniel W. Baker,* United States Attorney for the District of Columbia, *Mr. Stuart McNamara,* Assistant, *Mr. George W. Woodruff,* Assistant Attorney General, Interior Department, and *Mr. F. W. Clements,* First Assistant Attorney, Interior Department, for the appellant.

*Mr. Edwin C. Brandenburg* and *Mr. F. Walter Brandenburg* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This case was submitted at the same time with that of *Garfield* v. *United States,* No. 1941, [*ante,* 109], and *Garfield* v. *United States,* No. 1951 [*post,* 153], and all were argued together upon motions to dismiss the several appeals, and upon the merits. The motions to dismiss are overruled for reasons given at length in the opinion delivered in *Garfield* v. *United States,* No. 1941; and the general questions raised on the merits are also settled by the opinion in that case.

There is but one substantial difference between the facts in that case and this, which needs to be considered. It appears in this case that the depositions of Andrews and son, taken by

the Commissioner of Pensions, without notice to relator, were used by him in making his recommendation to the Secretary, and by the latter in coming to his conclusion. The use of such testimony without the knowledge, or over the protest, of the relator, would undoubtedly amount to a denial of a necessary element in a hearing that responds to the constitutional requirement of due process of law. But it appears that copies of these depositions were delivered to the relator by the Pension Commissioner, and that they were submitted by him in his statement and argument subsequently made before the Secretary pending the consideration of his case. As stated in the Secretary's answer, the relator not only did not object to the consideration of this testimony, but also commented upon the same in his argument. This answer is admitted by the demurrer to be true; and it may be added that it is borne out by an inspection of the said statement and argument which was filed as an exhibit to the petition. There had been no meeting of relator and Andrews. Consequently, the entire transaction was contained in their correspondence. This correspondence had been stated or copied in relator's answer to the charge, and showed all of the facts of the transaction. It is probable that relator's failure to object to the consideration of the depositions was due to this fact. No matter what the reason may have been, he did not object to the testimony, and discussed it in his final statement of defense. If this were an appellate proceeding to review the decision of the Secretary in the premises, on the ground of the admission of incompetent testimony, the appellant would, under the conditions stated, be estopped by his own action to raise the question. We cannot, therefore, in a case where we have no such supervisory power, say that the taking and consideration of the testimony, under such circumstances, amounted to a denial of due process of law, and authorized the intervention of a court of law. The Secretary having jurisdiction of the case made in conformity with the law and the regulations governing the same, and having acted within that jurisdiction, the exercise of his judgment and discretion cannot be questioned by a court having no supervisory jurisdiction.

For the reasons here given and others to be found in the opinion in No. 1941, the order will be reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.                          *Reversed.*

A petition by the appellee for a rehearing was denied January 6, 1909.